Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| NATALIA D. CATONI EN SU CARÁCTER DE SECRETARIA DESIGNADA DEL DEPARTAMENTO DE ASUNTOS DEL CONSUMIDOR<br><br>Apelado<br><br>v.<br><br>KINDRED SPIRITS, INC. H/N/C RESTAURANTE BOTTLES<br><br>Apelante | KLAN202500408 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2025CV00957<br><br>Sobre: Petición para hacer cumplir orden del DACO (RPC-2023-54773-6) |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de junio de 2025.

Comparece Kindred Spirits Inc. h/n/c Restaurante Bottles (en adelante, KSI y/o parte apelante) mediante un recurso de *Apelación*, para solicitarnos la revisión de la *Sentencia* emitida y notificada el 21 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan.[1] Mediante la *Sentencia* apelada, el foro primario declaró *Ha Lugar* la Petición instada por el Departamento de Asuntos del Consumidor (DACo). En consecuencia, acogió y confirmó la *Resolución sumaria* notificada por el DACo el 13 de octubre de 2022. Asimismo, advirtió a KSI que, de incumplir con los términos de la *Sentencia*, se ordenaría su ejecución, y le impuso $1,000.00 dólares por concepto de honorarios de abogado.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

---

[1] Apéndice del recurso, a las págs. 14-19. Véase el Sistema Unificado de Manejo y Administración de Casos (SUMAC), a la Entrada 13.

Número Identificador

SEN2025_____

I

Surge de los autos ante nuestra consideración que, el 4 de febrero de 2025, el DACo instó una *Petición para hacer cumplir orden*.[2] Esbozó que, de acuerdo con la Ley Orgánica del Departamento de Asuntos del Consumidor (Ley Orgánica del DACo),[3] el Secretario de la referida agencia estaba facultado para recurrir al foro de instancia para poner en vigor una orden o resolución dictada por la agencia. Explicó que, el 12 de octubre de 2022, el DACo emitió una *Resolución Sumaria*,[4] notificada al día siguiente, la cual advino final. Detalló que, mediante el antedicho dictamen, el DACo ratificó una multa administrativa impuesta a KSI en la cual se le ordenó pagar la suma de $1,000.00 dólares por violación a la Regla 14(b)(14) del Reglamento de Prácticas Comerciales,[5] al realizar cobro por servicio por uso de instalaciones. Indicó, además que, a través de la antedicha Resolución Sumaria, el DACo concedió el término de veinte (20) días para emitir el pago, el cual incluiría los intereses correspondientes. A tenor, solicitó al tribunal de primera instancia que emitiera una sentencia mediante la cual obligara al cumplimiento con el dictamen del DACo e impusiera la suma de $500.00 dólares, por concepto de honorarios de abogado. De igual forma, peticionó que se apercibiera al KSI sobre encontrarle incurso en desacato en caso de incumplimiento.

En reacción, el 6 de marzo de 2025, compareció KSI mediante una *Moción de oposición a petición de hacer cumplir orden*.[6] Adujo que la solicitud instada por el DACo no procedía porque no contaba con la reglamentación requerida para hacerlo. Arguyó que, de acuerdo con la Ley para la Transparencia en el Recibo de Compra

---

[2] Apéndice del recurso, a las págs. 61-73.
[3] Ley Núm. 5 de 23 de abril de 1973, 3 LPRA sec. 341 *et seq.*
[4] Apéndice del recurso, a las págs. 66-72. La *Resolución Sumaria* fue emitida el 12 de octubre de 2022, y notificada el día 13, del mismo mes y año.
[5] Reglamento Núm. 9158 de 6 de febrero de 2020.
[6] Apéndice del recurso, a las págs. 48-57.

(Ley Núm. 209),[7] la cual regula lo concerniente a los cargos por servicio en Puerto Rico, se prohíbe el cobro por servicio en establecimientos comerciales dedicados a la venta de comida y/o bebidas alcohólicas, excepto cuando el servicio fuese requerido por el cliente. Además, esbozó que la antedicha Ley faculta al secretario del DACo a imponer multas administrativas por incumplimientos con la misma. Expresó que, para que dicha Ley tuviese efecto, debía promulgarse un reglamento, lo cual razonó no ha ocurrido. Añadió que la imposición de la multa administrativa en el caso de autos se emitió al amparo del Reglamento de Prácticas Comerciales,[8] promulgado cuatro (4) años después de la aprobación de la Ley Núm. 209,[9] no se aprobó al amparo de esta última. Acotó que, la ausencia de un reglamento promulgado conforme a derecho impedía que el DACo pudiese ejercer su discreción dentro de los límites impuestos por ley. A tenor, solicitó que se declarara nula y se dejara sin efecto la Regla 14 (b)(14) del Reglamento de Prácticas Comerciales,[10] revocara la *Resolución Sumaria* en cuestión y desestimara el caso.

Luego de varios trámites innecesarios pormenorizar, el 21 de marzo de 2025, el foro *a quo* emitió y notificó la *Sentencia* que nos ocupa.[11] Mediante el referido dictamen, el foro de instancia declaró *Ha Lugar* la petición instada por el DACo. En consecuencia, acogió y confirmó la *Resolución sumaria* emitida por la antedicha agencia y advirtió a KSI que, decursado el término provisto en la misma, se procedería a ordenar su ejecución. Además, declaró *No Ha Lugar* la oposición presentada por apelante y le impuso el pago de $1,000.00 dólares por concepto de honorarios de abogado.

En su dictamen, el tribunal de instancia concluyó que luego de revisar la oposición al petitorio del DACo, se percató de que el

---

[7] Ley Núm. 209-2016, 10 LPRA sec. 4241 *et seq.*
[8] Reglamento Núm. 9158.
[9] 10 LPRA sec. 4241 *et seq.*
[10] Reglamento Núm. 9158.
[11] Apéndice del recurso, a las págs. 14-19. Véase el SUMAC, a la Entrada 13.

mismo era un clásico recurso de revisión judicial, disfrazado bajo el argumento de falta de jurisdicción del DACo, por alegada ausencia de un reglamento que le permitiera imponer una multa a KSI. Expresó que el argumento estaba a destiempo y fuera del foro adecuado. Añadió que KSI debió haber presentado de forma oportuna el correspondiente recurso de revisión judicial ante el Tribunal de Apelaciones, pero no lo hizo. De otra parte, razonó que el escrito presentado por KSI constituía un acto de temeridad, puesto a que le ocupó el tiempo no solo al Tribunal, sino a los abogados del DACo, provocando con su proceder la mal utilización de fondos públicos en defensas inmeritorias, procurando ganar tiempo para extender el momento de pagar una multa de $1,000.00 dólares. Por último, advirtió que "[e]l abuso del derecho no puede ser patrocinado por los tribunales".[12]

Inconforme, el 7 de abril de 2025, KSI interpuso una *Moción de reconsideración de KSI*,[13] la cual fue denegada mediante *Resolución* emitida y notificada al día siguiente.[14]

En desacuerdo, el 8 de mayo de 2025, compareció KSI mediante un recurso de *Apelación*, en el cual alzó los siguientes cinco (5) señalamientos de error:

A. ERRÓ EL TPI AL DECLARAR COMO TARDÍA LA OPOSICIÓN PRESENTADA POR KSI, AL IGNORAR QUE, CONFORME A NUESTRO ORDENAMIENTO JURÍDICO, LA VALIDEZ DE UN REGLAMENTO PUEDE SER IMPUGNADA EN CUALQUIER MOMENTO POR LA PARTE ADVERSAMENTE AFECTADA ANTE EL TRIBUNAL DE PRIMERA INSTANCIA.

B. ERRÓ EL TPI AL CATALOGAR LA OPOSICIÓN PRESENTADA POR KSI COMO FR[Í]VOLA E IMPONER SANCIONES A CAUSA DE ELLO.

C. ERRÓ EL TPI AL AVALAR QUE DACO ACTUARA EN BASE A UN REGLAMENTO QUE NO SE APROBÓ CONFORME A LA LEY 209-2016, ESTATUTO QUE REGULA LA APLICACIÓN DE CARGOS POR SERVICIOS.

D. ERRÓ EL TPI AL VALIDAR LA MULTA IMPUESTA POR DACO, A PESAR DE QUE DICHA ACTUACIÓN FUE ULTRA

---

[12] Apéndice del recurso, a la pág. 19.
[13] *Íd.*, a las págs. 3-13.
[14] *Íd.,* a las págs. 1-2.

VIRES POR NO HABER ADOPTADO UN REGLAMENTO SEGÚN REQUIERE LA LEY 209-2019.

E. ERRÓ EL TPI AL DICTAR SENTENCIA ANTES DEL VENCIMIENTO DEL TÉRMINO CONCEDIDO PARA DUPLICAR, INFRINGIENDO EL DERECHO AL DEBIDO PROCESO DE KSI.

Mediante *Resolución* del 12 de mayo de 2025, concedimos a la parte apelada hasta el 6 de junio de 2025, para presentar su alegato en oposición al recurso.

El 5 de junio de 2025, compareció la parte apelada mediante *Alegato en oposición a recurso de apelación*. Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso ante nuestra consideración.

## II

### A. Manejo del Caso

En grado de apelación, la tarea principal del Tribunal de Apelaciones es examinar como los tribunales inferiores aplican el derecho a los hechos particulares de cada caso, y si abusaron de su discreción.[15] En consecuencia, el foro apelativo no debe pretender administrar ni manejar el trámite regular de los casos ante el foro primario.[16] Así, pues, si las determinaciones del tribunal no están desprovistas de base razonable ni perjudican los derechos de una parte, debe prevalecer el criterio del juez de instancia.[17] Por ello, se ha establecido que los foros apelativos no deben intervenir con las facultades discrecionales del tribunal de instancia, a menos que se demuestre que: (i) actuó con perjuicio o parcialidad; (ii) abusó de su discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o derecho sustantivo. Igualmente, se permite intervenir para evitar un perjuicio sustancial.[18]

---

[15] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 707 (2013); *Sierra, Secretario del Trabajo v. Tribunal Superior*, 81 DPR 554, 572 (1958).
[16] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013).
[17] *Sierra, Secretario del Trabajo v. Tribunal Superior*, supra, a la pág. 572.
[18] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 210 (2023).

### B. Solicitud para Hacer Cumplir Órdenes del DACo

El DACo es la agencia facultada, en virtud de la Ley Núm. 5, para vindicar los derechos del consumidor.[19] La referida agencia tiene una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración[20] A su vez, el Secretario del DACo tiene facultad para "[i]nterponer cualesquiera remedios legales que fueran necesarios para hacer efectivos los propósitos de esta ley y hacer que se cumplan las reglas, reglamentos, órdenes, resoluciones y determinaciones del Departamento".[21]

Ahora bien, es norma harta conocida que las agencias administrativas, a diferencia de los tribunales, no cuentan con poder coercitivo para obligar a que se cumplan sus órdenes y resoluciones.[22] En consecuencia, se ha reconocido la facultad del Secretario del DACO de acudir al tribunal de instancia para solicitar que se ponga en vigor cualquier orden de cesar y desistir por él emitida o cualquier orden correctiva.[23] De manera que, si el foro primario declara con lugar la solicitud de este, la persona que incumpla con el dictamen incurrirá en desacato al Tribunal.[24]

Precisa señalar que el anterior procedimiento no debe confundirse con el procedimiento de revisión judicial.[25] Sabido es que la revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[26] A tales efectos, el Artículo 4.006 (c) de la Ley de la

---

[19] *Ortiz Rolón v. Armando Soler Auto Sales*, Inc., 202 DPR 689, 696 (2019); *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 563 (2014); Exposición de Motivos de la Ley Orgánica del Departamento de Asuntos del Consumidor, Ley Núm. 5 de 23 de abril de 1973, 3 LPRA sec. 341 *et seq.*
[20] *Ortiz Rolón v. Armando Soler Auto Sales*, Inc., supra, a la pág. 696.
[21] Artículo 6 (i) de la Ley Núm. 5, 3 LPRA sec. 341e.
[22] *Ortíz Matías v. Mora Development*, 187 DPR 649, 655 (2013).
[23] Artículo 13 (e) de la Ley Núm. 5, 3 LPRA sec. 341 l.
[24] *Íd.*
[25] *Ortíz Matías v. Mora Development*, supra, a la pág. 656.
[26] *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).

Judicatura del Estado Libre Asociado de Puerto Rico[27] otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[28] Empero, quien interese que este foro apelativo ejerza su faculta revisora, debe presentar su recurso de revisión judicial en el término jurisdiccional de treinta (30) días, conforme dispone la su Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG).[29] La antedicha sección provee que este plazo comienza a partir de la fecha en que se archive en autos la notificación de la resolución, o desde la fecha en que se interrumpa ese término mediante la oportuna presentación de una moción de reconsideración.[30]

Igualmente, una parte adversamente afectada por una resolución u orden de una agencia puede optar por solicitarle a la agencia que reconsidere su determinación, previo a acudir en revisión judicial.[31] La parte promovente tendrá veinte (20) días, desde la fecha de archivo en autos de la notificación de la resolución u orden, para presentar una moción de reconsideración.[32] De ahí, la agencia contará con quince (15) días para disponer si considerará la solicitud.[33]

Establecido lo anterior, huelga apuntalar que, el procedimiento antes señalado, para poner en vigor una orden del DACo, ocurre en una etapa posterior a la revisión judicial. Es decir, una vez el dictamen adviene final y firme. [34] A tales efectos, en el procedimiento de ejecución de orden no debe pasarse juicio sobre la corrección del dictamen de la agencia, como tampoco "debe

---

[27] Ley Núm. 201-2003, 4 LPRA sec. 24y(c).
[28] *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[29] Ley 38-2017, 3 LPRA sec. 9672.
[30] *Íd.* Véase, además, la Regla 57 del Reglamento de Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.57.
[31] Sección 3.15 de la Ley 38-2017, 3 LPRA sec. 9655.
[32] *Íd.*
[33] *Íd.*
[34] *Ortíz Matías v. Mora Development*, supra, a las págs. 656-657.

convertirse en un ataque colateral a la decisión ni en un método alterno de revisión judicial".[35]

### C. Honorarios por Temeridad

La Regla 44 de Procedimiento Civil aborda lo relativo a costas, honorarios de abogado e interés legal. Esta tiene un fin de índole disuasivo, en otras palabras, desalentar los pleitos temerarios y superfluos.[36] En específico, la Regla 44.1 (d) de Procedimiento Civil dispone que:

> [e]n caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al o a la responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponda a tal conducta. [...].[37]

El concepto temeridad no está expresamente definido por la Regla 44.1 (d) de Procedimiento Civil.[38] Sin embargo, la temeridad ha sido definida en la jurisprudencia como "toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias".[39]

Existen varias instancias bajo las cuales puede surgir temeridad, a saber: (i) contestar una demanda y negar responsabilidad total, aunque se acepte posteriormente; (ii) defenderse injustificadamente de la acción; (iii) creer que la cantidad reclamada es exagerada y que sea esa la única razón que se tiene para oponerse a las peticiones del demandante sin admitir francamente su responsabilidad, pudiendo limitar la controversia a la fijación de la cuantía a ser concedida; (iv) arriesgarse a litigar un caso del que se desprendía prima facie su responsabilidad, y (v) negar un hecho que le conste es cierto a quien hace la alegación.[40]

---

[35] *Ortíz Matías v. Mora Development,* supra, a las págs. 656-657.
[36] *J.T.P. Development Corp. v. Majestic Realty Corp.*, 130 DPR 456, 460 (1992).
[37] 32 LPRA Ap. V, R. 44.1 (d).
[38] *Fernández v. San Juan Cement Co., Inc.*, 118 DPR 713, 718 (1987).
[39] *Blas v. Hosp. Guadalupe,* 146 DPR 267, 335 (1998).
[40] *Íd.*, a las págs. 335-336.

Se desprende de los anteriores ejemplos que el propósito de la imposición de honorarios de abogado, en casos de temeridad, es "establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito".[41]

Precisa señalar que, una vez el tribunal sentenciador concluye que una parte ha sido temeraria, es imperativa la imposición de honorarios de abogado.[42] No obstante, lo anterior, aclaramos que, aunque en la sentencia haya ausencia de una conclusión expresa de que una parte fue temeraria, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado implica que el tribunal sentenciador consideró temeraria a la parte así condenada. Entiéndase que, al imponerle honorarios de abogado a una parte, el foro primario realizó una determinación de temeridad.[43]

Por último, huelga acentuar que la determinación de temeridad es de índole discrecional, por lo que los tribunales apelativos solo debemos intervenir con ella cuando nos enfrentemos a un caso en el cual se desprende diáfanamente un abuso de discreción.[44]

III

En el presente caso, la parte apelante levanta cinco (5) señalamientos de error en los cuales, esencialmente, nos invita a concluir que foro primario falló en declarar con lugar una *Petición para hacer cumplir orden* presentada por el DACo. En su recurso, arguye que el referido foro incidió en: (i) declarar como tardía su

---

[41] *Andamios de P.R. v. Newport Bonding,* 179 DPR 503, 520 (2010), citando a *Fernández v. San Juan Cement Co., Inc.*, supra, a la pág. 718.
[42] *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005).
[43] *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999); *Montañez Cruz v. Metropolitan Cons. Corp.* 87 DPR 38, 40 (1962).
[44] *S.L.G. Flores–Jiménez v. Colberg,* 173 DPR 843, 866 (2008); *Colón Santos v. Coop. Seg. Mult. P.R.*, 173 DPR 170, 188 (2008).

oposición a la petición del DACo, pese a que la validez de un reglamento puede ser impugnada en cualquier momento; (ii) permitir que el DACo actuara en base a un reglamento que no se aprobó conforme a la Ley, y (iii) validar una actuación *ultra vires* del DACo, quien falló en adoptar un reglamento según lo requiere el estatuto que regula la aplicación de los cargos por servicio. En vista de que los antedichos planteamientos se encuentran íntimamente relacionados, los entenderemos en conjunto. Ahora bien, el apelante, igualmente, plantea que el tribunal *a quo* incidió al dictar sentencia antes de vencer el término concedido para duplicar y al imponerle honorarios por temeridad, estos dos señalamientos los atenderemos por separado.

Según reseñamos, la acción del título tuvo sus inicios cuando el DACo instó una petición ante el foro primario, mediante la cual le solicitó que emitiera un dictamen que obligara al apelante a cumplir con el pago de una multa de $1,000 dólares, impuesta en su contra, por haber incumplido con el Reglamento de Prácticas Comerciales.[45] En reacción, el apelante presentó oposición. En su escrito, le peticionó al tribunal de instancia que declarara nula la *Resolución Sumaria* mediante la cual se le condenó al pago de la multa. Ello, puesto que, al emitir la referida resolución en su contra, el DACo no contaba con un reglamento promulgado conforme a derecho el cual lo facultara a imponer la antedicha multa.

Examinado el escrito en oposición, el tribunal de instancia le requirió al DACo que replicara.[46] Luego de que el DACo presentó la correspondiente réplica,[47] el apelante presentó una *Moción informado intención de duplicar*,[48] la cual fue declarada *Ha Lugar* por el foro primario.[49] Empero, pasados unos días, el tribunal *a quo*

---

[45] Reglamento Núm. 9158, *supra.*
[46] Apéndice del recurso, a la pág. 47.
[47] *Íd.*, a las págs. 24-40.
[48] *Íd.*, a las págs. 21-22.
[49] *Íd.*, a la pág. 20.

emitió la *Sentencia* que nos ocupa. Mediante el referido dictamen, declaró *Ha Lugar* la petición del DACo. A su vez, declaró *No Ha Lugar* la oposición del apelante y lo condenó al pago de $1,000.00 dólares por concepto de honorarios de abogados.

Conforme expusimos en nuestra previa exposición doctrinal, dado a que las agencias administrativas no tienen poder coercitivo, se ha reconocido la facultad del DACo de recurrir al tribunal de instancia para solicitar que se hagan cumplir órdenes emitidas por esta agencia.[50] Ahora bien, se ha enfatizado que este procedimiento no debe confundirse con el de revisión judicial.[51] De manera que, el juzgador de instancia está impedido de pasar juicio sobre el dictamen de la agencia, y el procedimiento no puede convertirse el procedimiento en uno de ataque colateral a la sentencia.[52]

Establecido lo anterior, este Panel coincide en que, puesto a que la oposición del apelante pretendía que el foro apelado pasara juicio sobre la corrección y validez del dictamen del DACo, dicho foro no abusó de su discreción al declarar *No Ha Lugar* ese escrito. Entiéndase que, el tribunal estaba impedido, por virtud del ordenamiento jurídico vigente, de revisar la *Resolución Sumaria* emitida por el DACo, así como de evaluar la procedencia de la multa impuesta al apelante. Por tanto, no estamos de acuerdo con los argumentos del apelante en cuanto a que, mediante la sentencia apelada, el tribunal de instancia avaló una actuación *ultra vires* por parte del DACo. El declarar *Ha Lugar* la *Petición de hacer cumplir orden* y confirmar la resolución emitida por el DACo fue únicamente a los fines de obligar a que el apelante cumpliera con lo ordenado mediante el referido dictamen. Ello, no implicó que el foro primario

---

[50] Artículo 13 (e) de la Ley Núm. 5, 3 LPRA sec. 341 l.
[51] *Ortíz Matías v. Mora Development,* supra, a la pág. 656.
[52] *Íd.,* a las págs. 656-657.

dio por correcto el dictamen de la agencia o que estampó corrección al remedio impuestos esta.

En lo referente al señalamiento del apelado en cuanto a que el tribunal de instancia incidió al dictar sentencia antes de que este presentara una dúplica autorizada por este foro, huelga subrayar que, conforme a nuestras Reglas de Procedimiento Civil, las únicas alegaciones permitidas son la demanda, la reconvención y la demanda contra coparte.[53] A esos efectos, quedará a discreción del tribunal permitir las correspondientes réplicas y dúplicas.[54] En consideración a lo anterior, precisa recordar que, en el manejo de los casos ante su consideración, el tribunal de instancia tiene amplia discreción. Por ende, los Tribunales Apelativos no debemos pretender conducir ni manejar el trámite ordinario de los casos que atiende la primera instancia judicial. Ello, puesto a que el foro primario es el que mejor conoce las particularidades del caso.[55] Así, pues, solo debemos de sustituir el criterio del tribunal cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[56] Tras examinar minuciosamente el expediente ante nuestra consideración, no encontramos que en este caso estén presente circunstancias que hagan meritorio intervenir con la decisión del juzgador de instancia de haber dictado sentencia antes de que se presentara la dúplica del apelante. Más aún, cuando la intención de la dúplica era elaborar el planteamiento en cuanto a que, mediante la presente acción, se podía atacar colateralmente el dictamen del DACo. Lo anterior, según ya expresamos, no es permitido. Si el apelante deseaba que se revisara la *Resolución Sumaria* emitida por la referida agencia, dado a que entendía que la misma se emitió en contravención a la

---

[53] Regla 5.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 5.1.
[54] *Íd.*
[55] *Mejías v. Carrasquillo*, 185 DPR 288, 306-307 (2012).
[56] *Rivera et al. v. Arcos Dorados et al.*, supra, a la pág. 210.

ley, debió haber presentado una oportuna reconsideración o un recurso de revisión judicial durante los términos correspondientes. Sin embargo, han transcurrido más de dos (2) años desde que se emitió la resolución en cuestión, por lo que esta es final y firme.

Por último, en lo referente al señalamiento del apelante, en el cual esgrimió que el tribunal *a quo* incidió al sancionarlo al pago de honorarios por temeridad, precisa acentuar que, sobre este particular, el juzgador de instancia razonó que la oposición presentada por el apelante fue temeraria, ya que era clara la jurisdicción del Tribunal en estos procesos. Concluyó, igualmente, que la mera presentación de la referida oposición le ocupó tiempo al tribunal y que fue un subterfugio para ganar tiempo y prolongar el momento en que le correspondiera pagar la multa impuesta por el DACo. Por su parte, la parte apelada nos plantea, en síntesis, que la temeridad surgió de las propias alegaciones de KSI para oponerse a la acción presentada por la parte apelante ante el foro de instancia y que este caso pudo evitarse.

Según expusimos anteriormente, los tribunales tienen la facultad de imponer la responsabilidad del pago de una suma por concepto de honorarios de abogado a cualquier parte que haya procedido con temeridad.[57] La referida conducta ha sido definida como la que hace que se prolongue innecesariamente un pleito, entiéndase: terquedad, obstinación, contumacia e insistencia.[58] Igualmente, se ha entendido la temeridad como "la conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias".[59]

---

[57] Regla 44.1 (d) de Procedimiento Civil, supra.
[58] *Andamios de P.R. v. Newport Bonding*, supra, a la pág. 520, citando a *Fernández v. San Juan Cement Co., Inc.*, supra, a la pág. 718.
[59] *Blas v. Hosp. Guadalupe*, supra, a la pág. 335.

Dicho lo anterior, cabe reseñar que, si el apelante hubiese: (i) realizado el pago de la multa impuesta en su contra en los veinte (20) días concedidos por DACo; (ii) presentado una oportuna reconsideración ante la agencia, o (iii) incoado un recurso de revisión judicial ante el Tribunal de Apelaciones, este pleito se pudo haber evitado. De otra parte, según adelantamos, desde que el DACo emitió la resolución en cuestión han transcurrido más de dos (2) años, en los cuales, según los autos ante nuestra consideración, el apelante no ha realizado ninguna gestión para cumplir con la multa impuesta. En consecuencia, no atisbamos razón para intervenir con la imposición de honorarios por temeridad en contra del apelante.

Por todo lo antes expuesto, nos es forzoso concluir que el foro primario *no cometió* ninguno de los errores esgrimidos por el apelante, de manera que, procede *confirmar* el dictamen apelado.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones